RCH:RWN
F. #2025R00036

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - X

UNITED STATES OF AMERICA

     - against -

ARABIA RITCHIE,

          Defendant.

- - - - - - - - - - - - - - - - - - - - - - - - - - X

**TO BE FILED UNDER SEAL**

COMPLAINT AND AFFIDAVIT IN SUPPORT OF AN APPLICATION FOR AN ARREST WARRANT

(18 U.S.C. § 371)

Case No. 25-MJ-343

EASTERN DISTRICT OF NEW YORK, SS:

       LUIS H. SANTOS, being duly sworn, deposes and states that he is a Special

Agent with the United States Department of Justice, Office of the Inspector General

("DOJ-OIG"), duly appointed according to law and acting as such.

       In or about January 2025, within the Eastern District of New York and elsewhere,

the defendant ARABIA RITCHIE, together with others, did knowingly and intentionally

conspire to: in violation of a statute or a rule or order issued under a statute, provide prohibited

objects, to wit: marijuana and tobacco cigarettes, to a prison inmate, contrary to Title 18, United

States Code, Section 1791(a)(1).

       (Title 18, United States Code, Section 371)

       The source of your deponent's information and the grounds for his belief are as

follows:[1]

---

[1] Because the purpose of this Complaint is to set forth only those facts necessary to establish probable cause to arrest, I have not described all the relevant facts and circumstances of which I am aware.

1. I am a Special Agent with the DOJ-OIG and have been since August 2023. Prior to working for DOJ-OIG, I was employed by the United States Secret Service for approximately four years.   I have been involved in the investigation of numerous cases involving official corruption, including investigations of correctional officers at the Metropolitan Detention Center in Brooklyn, New York.   I am familiar with the facts and circumstances of this investigation from my personal participation in the investigation, review of documents, and discussions I have had with other law enforcement personnel.   Where the contents of documents and the actions, statements and conversations of others are reported herein, they are reported in substance and in part.

I. Background

2. The DOJ-OIG and the United States Attorney's Office for the Eastern District of New York are investigating the smuggling of contraband by United States Bureau of Prisons ("BOP") correctional officers into the Metropolitan Detention Center ("MDC"), a federal jail in Brooklyn, New York.   The MDC is currently New York City's only federal detention facility.   Although most individuals incarcerated at the MDC are detained prior to their trial on federal charges filed in the United States District Court for the Eastern District of New York or the United States District Court for the Southern District of New York, some individuals at the MDC have already been convicted or sentenced.   Currently, approximately 1,300 individuals are incarcerated at the MDC.

3. Incarcerated individuals at the MDC are not permitted to possess contraband inside the MDC.   According to the BOP's Standards of Employee Conduct (the "Standards of Employee Conduct"), contraband is defined as "material prohibited by law, or by regulation, or material which can reasonably be expected to cause physical injury or adversely

affect the security, safety, or good order of the institution," which includes marijuana, narcotics, cellular telephones, and cigarettes, among other prohibited items.   I have learned that contraband often sells inside BOP facilities for many multiples greater than its cost outside of BOP facilities.

4.    The Standards of Employee Conduct expressly forbid BOP employees from "offer[ing] or giv[ing] to an inmate or a former inmate or any member of their family, or to any person known to be associated with an inmate or former inmate, any gift, article, favor, or service that is not authorized in the performance of the employee's duties."   All BOP correctional officers, among other BOP employees, receive copies of the Standards of Employee Conduct and sign forms acknowledging receipt when they begin their employment. Employees also receive yearly training on the topics contained therein, including the regulations against contraband.

5.    Based on my training and experience, and information obtained from other law enforcement officers, I am aware that contraband is often smuggled into the MDC by correctional officers, frequently in exchange for bribes from incarcerated individuals.

II.    The Defendant and NAJEE JACKSON

6.    NAJEE JACKSON is a former federal correctional officer.   JACKSON began his employment as a correctional officer with BOP on or about November 5, 2023.   From in or about November 2023 to January 2025, JACKSON was assigned to work as a correctional officer at the MDC.

7.    On or about January 21, 2025, at approximately 12:15 a.m., NAJEE JACKSON arrived at the MDC to work a scheduled night shift.   Before entering the MDC, staff members are required to pass through a staff screening area, consisting of a metal detector and a

conveyor belt that passes through an x-ray machine.    JACKSON walked through the metal detector while wearing a dark green BOP-issued protective vest multiple times, and he repeatedly triggered the alarm.    JACKSON then removed his vest, and another correctional officer took possession of it and found that it contained four packages wrapped in plastic wrap. These packages were opened and found to contain three vacuum-sealed bags containing cigarettes and one vacuum-sealed bag containing a green leafy substance, which a field test confirmed to be marijuana.    JACKSON was also found to be in possession of two lighters and one box of rolling papers.    Photographs of the packages seized from JACKSON's vest, their contents, and the lighters and rolling papers are shown below:





8.      On or about January 23, 2025, the Honorable Vera M. Scanlon issued a criminal complaint and arrest warrant charging NAJEE JACKSON with attempting to provide contraband to a prison inmate in violation of 18 U.S.C. §§ 1791(a)(1) and 1791(b)(3), under Magistrate Docket Number 25-18 ("Complaint 25-MJ-18").

9.      On or about January 29, 2025, NAJEE JACKSON was arrested and arraigned on Complaint 25-MJ-18 before the Honorable Vera M. Scanlon and released on a $10,000 bond with one suretor.   See United States v. Najee Jackson, 25-CR-67 (OEM), Dkt. Entry dated January 29, 2025.

10.     The defendant ARABIA RITCHIE attended NAJEE JACKSON's arraignment on Complaint 25-MJ-18.   Before the arraignment, RITCHIE engaged in a voluntary interview with law enforcement and stated that she had been friends with JACKSON for approximately twelve years.   RITCHIE signed the bond as JACKSON's sole suretor.

III.    The Defendant Conspired with JACKSON to Smuggle Contraband into the MDC

11.     Following the arrest of NAJEE JACKSON, DOJ-OIG and the United States Attorney's Office for the Eastern District of New York continued to investigate the circumstances surrounding JACKSON's attempted smuggling of contraband into the MDC and uncovered evidence that the defendant ARABIA RITCHIE conspired with JACKSON to smuggle the aforementioned contraband into the MDC.

12.     On or about January 28, 2025, the Honorable Vera M. Scanlon authorized a search warrant for any cell phones found on NAJEE JACKSON's person or in personal effects in his immediate vicinity and control, under Magistrate Docket No. 25-MC-388 ("Search Warrant 25-MC-388").

13.     On or about January 29, 2025, law enforcement agents went to NAJEE JACKSON's apartment to apprehend him.   Agents knocked on the door to the apartment and instructed JACKSON to come out.   JACKSON came to the door and was placed under arrest. Agents then entered the apartment and observed one Samsung Galaxy S23 (the "JACKSON Phone") on top of JACKSON's bed.   JACKSON was then brought back into the apartment, where he identified the JACKSON Phone as his cell phone.   The JACKSON Phone was then seized pursuant to Search Warrant 25-MC-388.

14.     Pursuant to Search Warrant 25-MC-388, law enforcement agents extracted and searched the contents of the JACKSON Phone.   The JACKSON Phone was found to contain text messages sent through the messaging application WhatsApp, including text messages between NAJEE JACKSON and a WhatsApp account with the username "A. R." and a phone number ending in -8479 (the "RITCHIE Number").   Records maintained by Verizon reflected that the RITCHIE Number was subscribed to the defendant ARABIA RITCHIE. Therefore, I believe the WhatsApp account "A. R." belongs to RITCHIE.

15.     Based on my review of these text messages and records of mobile payments sent and received by the defendant ARABIA RITCHIE, I believe that RITCHIE conspired with NAJEE JACKSON to smuggle contraband into the MDC.

16.     In particular, on or about January 6, 2025, the defendant ARABIA RITCHIE sent the following message to NAJEE JACKSON on WhatsApp: "By the way nobody sent anything to me for you".   JACKSON responded, "It's not time", to which RITCHIE replied, "Understood."   The following day, RITCHIE messaged JACKSON: "No word on anything."   Based on my training, experience and familiarity with this investigation, I believe that, in these text messages, RITCHIE was advising JACKSON that she had not received any

bribe payments for JACKSON from associates of individuals incarcerated at the MDC, to which JACKSON replied that the time had not yet come for those bribe payments to be delivered.

17.     On or about January 16, 2025—five days before NAJEE JACKSON attempted to smuggle contraband into the MDC—records maintained by Green Dot Bank show that an Apple Pay account in the name of the defendant ARABIA RITCHIE (the "RITCHIE Apple Pay Account") received a payment of $1,000 from an Apple Pay account in the name of Individual-1, an individual whose identity is known to your affiant.   Records maintained by the Bureau of Prisons ("BOP") indicate that, between approximately December 5, 2024 and February 12, 2025, Individual-1 sent money to the commissary accounts of approximately fourteen different inmates at the MDC.   Based on my training, experience, and familiarity with this investigation, I believe that Individual-1's $1,000 payment to RITCHIE constituted a bribe payment on behalf of unidentified MDC inmates that RITCHIE was receiving on behalf of JACKSON, in exchange for JACKSON agreeing to smuggle contraband into the MDC.

18.     Also on or about January 16, 2025, the RITCHIE Apple Pay Account received another payment of $1,000 from an Apple Pay account in the name of Individual-2, an individual whose identity is known to your affiant.   BOP records indicate that, on or about December 8, 2022, Individual-2 sent $85 to the commissary account of an inmate detained at the MDC, who was still detained at the MDC in January 2025.   Based on my training, experience, and familiarity with this investigation, I believe that Individual-2's $1,000 payment to the defendant ARABIA RITCHIE constituted a bribe payment on behalf of unidentified MDC inmates that RITCHIE was receiving on behalf of NAJEE JACKSON, in exchange for JACKSON agreeing to smuggle contraband into the MDC.

19.     Besides these successful payments, Green Dot Bank records also show several failed attempts to send payments to the RITCHIE Apple Pay Account by other individuals who are associated with MDC inmates.   For example, on or about January 14, 2025, an Apple Pay account in the name of Individual-3, an individual whose identity is known to your affiant, attempted to send four payments to the RITCHIE Apple Pay Account in amounts of $2,000, $2,000, $1, and $1, respectively, each of which failed.   BOP records indicate that, on or about December 11, 2024, Individual-3 sent $100 to the commissary account of an inmate detained at the MDC; and on or about and between December 22, 2024 and February 19, 2025, Individual-3 sent money to approximately three other inmates incarcerated at different federal correctional facilities.   Based on my training, experience, and familiarity with this investigation, I believe that Individual-3's attempted payments to the defendant ARABIA RITCHIE constituted bribe payments on behalf of unidentified MDC inmates that RITCHIE was receiving on behalf of NAJEE JACKSON, in exchange for JACKSON agreeing to smuggle contraband into the MDC.

20.     Also on or about January 14, 2025, an Apple Pay account in the name of Individual-4, an individual whose identity is known to your affiant, attempted to send three payments to the RITCHIE Apple Pay Account, in the amounts of $1,000, $200, and $500, each of which failed.   BOP records indicate that, on or about and between December 23, 2024 and May 3, 2025, Individual-4 sent money to the commissary accounts of approximately three different inmates at the MDC.   Based on my training, experience, and familiarity with this investigation, I believe that Individual-4's attempted payments to the defendant ARABIA RITCHIE constituted bribe payments on behalf of unidentified MDC inmates that RITCHIE was

receiving on behalf of NAJEE JACKSON, in exchange for JACKSON agreeing to smuggle contraband into the MDC.

21.     On or about January 16, 2025, at approximately 11:08 p.m., the defendant ARABIA RITCHIE sent the following message to NAJEE JACKSON on WhatsApp: "I have 5k so far in payments. Picking up the package tomorrow in the Bronx". Approximately four minutes later, RITCHIE called JACKSON through WhatsApp. Based on my training, experience, and familiarity with this investigation, I believe that, in this text message, RITCHIE was advising JACKSON that she had received $5,000 in bribe payments on JACKSON's behalf from associates of MDC inmates and that she would be picking up contraband in the Bronx the following day, which JACKSON would subsequently smuggle into the MDC.

22.     On or about January 17, 2025, the RITCHIE Apple Pay Account received two more payments from Individual-2, in the amounts of $2,500 and $500.

23.     On or about January 18, 2025, records maintained by Zelle show that a Zelle account in the name of the defendant ARABIA RITCHIE sent a payment of $1,500 to a Zelle account in the name of NAJEE JACKSON with the subject line "Nana birthday party." Based on my training, experience, and knowledge of this investigation, I believe that RITCHIE may have been transmitting some of the bribe payments received from associates of MDC inmates to JACKSON, disguising the payment as related to a relative's birthday party.

24.     Notably, the defendant ARABIA RITCHIE has also received at least one payment directly from an MDC inmate. Green Dot Bank records show that on or about December 4, 2024, the RITCHIE Apple Pay Account received a payment of $1,000 from an Apple Pay account in the name of Individual-5, an individual whose identity is known to your

affiant.   BOP records indicate that, in December 2024, Individual-5 was an inmate detained at the MDC.

25.    Based on the facts set forth above and my training and experience investigating the smuggling of contraband at the MDC, there is probable cause to believe that the defendant ARABIA RITCHIE conspired with NAJEE JACKSON to smuggle contraband into the MDC.   In furtherance of this conspiracy, RITCHIE obtained the contraband and received payments on behalf of inmates at the MDC.

WHEREFORE, your deponent respectfully requests that the defendant ARABIA RITCHIE be dealt with according to law.

I further request that the Court issue an order sealing, until further order of the Court, all papers submitted in support of this application, including the affidavit and arrest warrant.   Based upon my training and experience, premature disclosure of the contents of this affidavit and related documents will seriously jeopardize the investigation, including by giving the defendant an opportunity to flee from prosecution, destroy or tamper with evidence and change patterns of behavior.

/s/ Luis H. Santos
_____
LUIS H. SANTOS
Special Agent
United States Department of Justice, Office of the
Inspector General

Sworn to before me this
____ 4th day of December, 2025

*Vera M. Scanlon*
_____
THE HONORABLE VERA M. SCANLON
UNITED STATES MAGISTRATE JUDGE
EASTERN DISTRICT OF NEW YORK